Kara Shacket, Esq. (SBN 265430)
3889 Caminito Aguilar # F
San Diego, CA 92111
(858) 877- 8812 – Phone
karashacket@gmail.com -Email

Attorney for I-15 Auctions,
Third Party

FILED

JAN 1 9 2016

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO DIVISION

| | |
|---|---|
| In re | Case No.:1:15-BK-13495-MT |
| PICTURE CAR WAREHOUSE, Inc. | MOTION FOR PROTECTIVE ORDER ON THE ORDER GRANTING DEBTOR'S MOTION FOR 2004 EXAMINATION OF "I-15 AUCTIONS," PERSON MOST KNOWLEDGEABLE, AND FOR PRODUCTION OF DOCUMENTS |
| Debtor | |
| | Ex Parte Hearing Date: |

I-15 AUCTIONS (hereinafter "Respondents"), submit this Response in Support of its Motion for Protective Order (hereinafter "Motion") relating to the Order Granting Debtor's Motion for 2004 Examination of I-15 Auctions, and for production of Documents (hereinafter "Order"), filed by Debtor, Picture Car Warehouse, Inc. (hereinafter, "Debtor"). Respondents, in support of their Motion for Protective Order, allege improper notice of the underlying Motion by Debtors, No subpoena was issued, improper use of 2004 examination by Debtors, and undue hardship and expense on Respondents in complying with Debtors Motion and subsequent Order.

## I. PRELIMINARY STATEMENT

1. The Respondents received by U.S. mail the Motion for a 2004 examination and production of documents for I-15 Auctions from Debtor on 01/06/16. The Respondents did receive an email version of a proposed motion on 12/28/15, but the actual Motion that was filed differed in language than the proposed Motion.

2. The proof of service of Motion for 2004 examination was dated 01/04/16.

3. The Motion for 2004 examination and production of documents for Respondents was filed by Debtor and was granted by Judge Tighe on 01/08/16.

4. The cover letter from Debtor to Respondents regarding the order was dated 01/12/15 and Respondents did not receive notice of the Order until 01/14/15 via U.S. Mail (Respondents are not a party and do not have a PACER or ECF account and are not electronic filers).

5. Debtor seeks to have Respondents make a designated representative available for examination as to how the debtor's property was handled, through his hired agent, International Trade Finance Corporation (hereinafter "ITF") aka Matthew Talbert (hereinafter "Talbert"), according to their motion and ordered on 01/08/16.

6. Debtor seeks to have Respondents respond to a production for documents as indicated in their Motion.

7. Debtor indicated improperly in their motion that Respondents were contacted prior to the bankruptcy filing. (Page 3 of Debtor's Motion, lines 5-6, Docket No. 67).

8. The bankruptcy was filed on 10/20/15, Docket entry No. 1.

9. November of 2015 was the first time Ms. Dye contacted I-15 Auctions, and this was after the present bankruptcy filing for her client.

10. In November of 2015, the attorney for Debtor, Ms. Dye, spoke with an employee of I-15 auctions, Ms. Johan Graham to discuss the requested documents.

11. Shortly after the phone call, Ms. Graham produced the requested documents via Fed-Ex. Debtors included those productions in Exhibit "B," batestamped numbers 23-47, in Debtors Motion for 2004 examination and request for production of documents. (Docket No. 67).

12. Much of the information sought is protected confidential and private third party information for which protection is necessary. The lists are trade secrets.

MOTION FOR PROTECTIVE ORDER ON THE ORDER GRANTING DEBTOR'S MOTION FOR 2004 EXAMINATION OF I-15 AUCTIONS, PERSON MOST KNOWLEDGEABLE, AND FOR PRODUCTION OF DOCUMENTS
- 2 -

13. Respondents assert that some production of documents have already been made to Ms. Dye, as Debtors attorney.

14. There has not been enough time, as permitted by local bankruptcy rules and the court manual, for Respondents to object to the motion filed by Debtors which was subsequently granted by this court.

15. The information is available to be given by a party to the case, Mr. Talbert and publicly available.

16. There was no subpoena issued for Respondents to appear at the 2004 examination or to produce documents.

17. There is undue burden and hardship if Respondents are forced to appear at a 2004 examination nearly 100 miles from their home and away from their jobs, which require 24-hour attention, mainly from sunup to sundown.

18. There is undue burden and hardship if Respondents are requested to produce documents without compensation.

19. There is not enough time for Debtors to respond to the production of document request by 01/19/16, when they received the order on 01/14/16, that would be a mere 5 days.

20. Debtor was present for at least one of the two auctions and should have knowledge of the transactions for which he can provide his own answers to the requested information.

21. **Debtor indicates that the requested information in the 2004 examination and production of documents "is required to supports a claim it may have against Talbert, personally."** (Debtors Motion, Page 3, lines 17-18 of Debtors Motion, Docket No. 67). **This is an improper use of the 2004 examination.** (As discussed below, this is precisely why a 2004 examination is inappropriate as there is potential pending litigation and there is a protected court process for taking depositions and conducting discovery).

## II.  CONFERENCE UNDER LOCAL RULE 2004-1

MOTION FOR PROTECTIVE ORDER ON THE ORDER GRANTING DEBTOR'S MOTION FOR 2004 EXAMINATION OF I-15 AUCTIONS, PERSON MOST KNOWLEDGEABLE, AND FOR PRODUCTION OF DOCUMENTS

- 3 -

22. Following the receipt of this Order for Debtors Motion for a 2004 examination and production of documents by Respondents, Respondent's attorney called Debtor's attorney on 0I-15/16.

23. During the 0I-15/16 phone call, in the morning, a request that an extension of time be granted to produce the documents and information requested as 4 days is not enough time. Debtor's attorney indicated that as long as she gets as much information as she can, she will not file a motion with the court indicating she received other information after the production deadline. Respondent's attorney informed her that the Respondents would do their best to produce as much information as they can before the deadline on 01/19/16.

24. During the same phone call, Respondent's attorney requested that the 2004 examination be postponed and the location moved. A first response by Debtor's attorney was no as she did not have an office in Apple Valley and that she needs the information to proceed with her case and was frustrated that she did not obtain the remaining documents before the court order. She would also not consider a teleconferencing option for the examination. Respondent's attorney indicated that Respondents work on a ranch and are needed throughout the day. The distance to travel is nearly 100 miles and they do not have someone that can take over their duties, they are the only ones who can do their jobs.

25. During the same phone call, upon further consideration, Debtor's attorney did indicate she would look into places near Apple Valley, CA to conduct the examination and would let me know, but that she would not be willing to move the date. She further indicated that the examination would be likely be held at her office as she does not know any places in Apple Valley, CA. Respondent's attorney indicated that a hotel conference room or a courtroom could be utilized near Respondent's home or in San Bernardino, about half way between Los Angeles and Apple Valley.

26. On I-15/16, around 3 p.m., Debtor's attorney, Ms. Dye, did contact Respondents attorney. Debtor's attorney offered to postpone the 2004 examination to 01/29/16 in Riverside, CA and the production of documents to 01/26/16. Debtor's attorney's efforts and cooperation is greatly appreciated in this matter.

27. Shortly thereafter on 0I-15/16, in a subsequent phone call, Respondent's attorney requested that a stipulation be entered into to protect valuable confidential third party private information. Debtor's attorney agreed and indicated she was only interested in information about Talbert or his affiliates buying property from PCW during the stated auctions on 3/1I-15 and 4/1I-15. Respondent's attorney requested a list of Talbert's affiliates so that a search of the records could be conducted and the relevant information be produced without disclosing the confidential third party buyer information. Debtor's attorney also indicated that a formal change of 2004 examination and production of document dates would be filed that evening.

28. Respondent's attorney then emailed Debtor's attorney a copy of a proposed stipulation on 0I-15/16.

29. On 1/16/16, around 4:00 p.m., Debtor's attorney emailed a different document outlining the proposed stipulation protecting third parties. This stipulation indicated that the third party information would be disclosed, that debtor could use the information, but that any disclosures to other parties to the case would be redacted and provided upon request to any third party or creditor.

30. Shortly thereafter, around 7:00 p.m., on 1/16/16, Respondent's attorney asked that the original draft of the third party stipulation be used, as it protected all third party information and the only disclosures would be the sales to Talbert and his affiliates of PCW property, but not other unrelated third party buyers.

31. The night of 1/18/16, Debtor's attorney would not agree. Debtor's attorney wanted further third party information about buyers who are not a party nor affiliated with the pending bankruptcy action. This information is protected and should not be provided.

MOTION FOR PROTECTIVE ORDER ON THE ORDER GRANTING DEBTOR'S MOTION FOR 2004 EXAMINATION OF I-15 AUCTIONS, PERSON MOST KNOWLEDGEABLE, AND FOR PRODUCTION OF DOCUMENTS

- 5 -

Knowing the names and addresses of buyer's of PCW property is not essential to knowing the value of the items sold. The items list and prices of items sold at the auctions have already been provided. Knowing the confidential and private names of third party buyers that are not Talbert or another creditor are simply not relevant, not necessary, and provide no useful knowledge to Debtor's attorney. However, this information is protected as a business asset, a trade secret and Respondent's business relies on the confidential nature of the transactions done at auction. There is no legitimate reason why the names and addresses of third parties need to be provided to Debtor's attorney and the harm to Respondent's business is great.

32. Debtor's attorney did ask that this Motion for protective order filing be postponed to allow time to discuss the stipulation and change the 2004 examination to a closer location. Rather than filing on 0I-15/16, Respondent's attorney gave Debtor's attorney a chance to cooperate. Unfortunately, Debtor's attorney is not willing to protect third party information in this case, which if disclosed, will harm Respondent's business, and for which the premise of the 2004 exam is to gather information for litigation and is improper, so, to preserve Respondents rights, this Motion is being filed as soon as the court opened today after the holiday weekend, 01/19/16, and such was relayed to Debtor's counsel.

### III. JURISDICTION AND VENUE

33. The court has jurisdiction over this Motion pursuant to 28 U.S.C. Sections 157 and 1334. Venue of Debtor's Chapter 11 case is in this district is proper pursuant to 28 U.S.C. Sections 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. Section 157(b).

34. The statutory predicates for relief sought herein are Rules 7026 and 9016 of the Bankruptcy Rules, and Section 105(a) of the Bankruptcy Code.

### IV. RELIEF REQUESTED

35. For all the reasons set forth herein, the Respondents respectfully requests that this court issue a Protective Order.

MOTION FOR PROTECTIVE ORDER ON THE ORDER GRANTING DEBTOR'S MOTION FOR 2004 EXAMINATION OF I-15 AUCTIONS, PERSON MOST KNOWLEDGEABLE, AND FOR PRODUCTION OF DOCUMENTS

## V. MOTION FOR PROTECTIVE ORDER

36. Respondents request a protective order in response to Debtors Motion and Order for 2004 examination.

37. FRBP 7026 relates to F.R.Civ.P. 26 and discusses, among other things protective orders.

Here, Part (C) discusses the following:

(1) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

38. Based on the above, we believe the 2004 examination and production of documents to be for undue burden, harassment, oppression and annoyance. We request that the court issue the order for allocation of expense for disclosure of discovery, requiring the confidential privileged client information, if produced, to be redacted, sealed and

opened only upon a court order and forbidding the 2004 examination and production of documents due to the litigious nature and intent behind the examination.

39. The information requested is of non-party buyer address, names, and other identifying information. The information requested is that of buyer's at auction of parties other than parties to the case, of persons other than Talbert or PCW. This information a TRADE SECRECT, is not relevant, not necessary to value the product (as the sales information of PCW items at auction has already been provided) and would severely impact and damage Respondent's business, whose clients use the auction to maintain their confidentially.

40. Respondents have already produced the material it has relating to Talbert and PCW. The only remaining documents are the contract between PCW and I-15 and copies of canceled checks, which can be obtained by a party to the case, Talbert, and take time. A container of goods is stored on the property and a time will be mutually arranged between PCW and I-15 for PCW to pick up their container. Respondents have no further information to provide. Third party information, including as it relates to buyer's identifying information of PCW's auctioned materials is not necessary for PCW's bankruptcy case to move forward. Furthermore, such a disclosure would damage the business's reputation and the businesses ability to continue to do auctions in the future.

41. Debtors did NOT issue a SUBPEONA for Respondents appearance at the 2004 examination. In order for Respondent's to appear at the 2004 examination or produce documents, especially privileged ones, there needs to be a subpoena that is issued.

42. Debtors DID NOT GIVE ENOUGH NOTICE to Respondents. There was only 4 days of notice given to Respondents before the deadline to produce documents and 12 days before they have to submit to examination. Furthermore, Debtors only gave Respondents 1 day to file an objection to their Motion before the Order was granted.

43. Debtors are requesting the 2004 examination in ANTICPATION OF LITIGATION and the use of such exam is improper.

MOTION FOR PROTECTIVE ORDER ON THE ORDER GRANTING DEBTOR'S MOTION FOR
2004 EXAMINATION OF I-15 AUCTIONS, PERSON MOST KNOWLEDGEABLE, AND FOR
PRODUCTION OF DOCUMENTS

44. Respondents would have to drive near 100 miles for the examination and miss a day of work, for which their attention is needed primarily from sunup to sundown, but they are on call for 24 hours. Debtor's attorney agreeing to a compromise location in Riverside, CA but no formal amendment has been made.

45. Debtors have not paid any production of document fees for the already produced documents, nor have their provided any money for further production.

46. Debtors have not provided any witness fees for the examination in advance so that debtors may be able to attend.

47. We request, the 2004 examination canceled and production of documents limited to those already produced and served and to find Respondents, I-15, has fully complied with the courts order without violating the rights of third parties. In the alternative, we request the Protective Order be issued, Respondents also request that the 2004 examination be held closer to Respondents place of business in Apple Valley, CA or via video. We request that the examination time be limited to 3 hours. We request that Debtors pay Respondents in advance for production of documents expenses and witness expenses.

## VI. IMPROPER AND INCOMPLETE NOTICE AND NO SUBPEONA ISSUED

48. Debtor needed to have attempted to set a conference for an agreeable date and time. LBR-2004-1(a). Here, no request was ever made or discussed with Respondents to a mutually agreeable time or date.

49. Debtor needs to indicate why **FRBP 7030 or 9014** are not sufficient avenues for obtaining the information before proceeding with the 2004 examination. LBR-2004-1(b). In Debtors motion, page 4, lines 4-9, Debtors indicate that there is no adversary proceeding against I-15 and therefore a 2004 examinations proper. However, as discussed below, this is untrue, and **there is potential litigation** against I-15 by Debtors as indicated in their Motion for 2004 examination filed with the court.

50. Notice of Motion must be given **not less than 21 days** from the date of service. LBR-2004-1(c). Here, the proof of service is dated 01/04/15, and received on 01/07/15, **a**

MOTION FOR PROTECTIVE ORDER ON THE ORDER GRANTING DEBTOR'S MOTION FOR 2004 EXAMINATION OF I-15 AUCTIONS, PERSON MOST KNOWLEDGEABLE, AND FOR PRODUCTION OF DOCUMENTS

mere **DAY before the Motion was granted by the Judge. This is 20 days too soon to file the Motion, much less, have the order granted.** Also, the Court Manual Section 1, Implementation of FRBP 9006(f), indicates that 3 additional days are added when there is a deadline to act or proceed. **Therefore, there should have been 24 days from 01/04/15 in order for Respondents to reply to Debtors Motion, or until 01/28/16, before an Order could be granted.**

51. Furthermore, **there was NO subpoena issued and served pursuant to FRBP 9016 and F.R.Civ.P. 45** (LBR 2004-1(e)). A subpoena is necessary to be served when a third party is being called for a 2004 examination. **The examination is nearly 100 miles from Respondents business and would be too far for a subpoena to be issued. F.R.Civ.P.(c)(1)(A). Respondents are not a party to the case and part (B) would therefore not apply.**

52. **The subpoena should have been issued and the protections it provides are for the "attorney responsible for issuing and serving a subpoena to avoid imposing undue burden or expense on a person subject to the subpoena." F.R.Civ.P.(c)(d)(1).**

53. Although the rules indicate that the Motion for Protective Order be filed and served not less than 14 days before the date of the examination and set for hearing at least 2 days before the hearing, this timeline is impossible to adhere to as the order for the 2004 examination was mailed on 01/12/16 and received by Respondents on 01/14/16, which would make it only 12 days in advance if they could reply the same day, which they could not. Rather, the day after receipt, this Motion for Protective order is being made, albeit 11 days in advance. LBR 2004-1(f).

54. Attempts to resolve the dispute were made according to Rule 7026-1(c). A phone discussion was had today as discussed above in Section II and near the end of the day, Debtor's attorney agreed to postpone the 2004 examination until 01/29/16, moved from 01/26/16, and the production deadline to 01/26/16, rather than 01/19/16. Debtor's

attorney also agreed to move the examination location to Riverside, CA, a closer location to Respondent's business.

55. Respondents Request that a Protective Order be issued as the proper time frames were not adhered to in this case, no subpoena issued, and the 2004 examination is for an improper motive and there is undue burden and harassment on Respondents who would have to reveal confidential client information which is a trade secret (as discussed below in section VII).

## VII. IMPROPER USE OF 2004 EXAM FOR LITIGATION

56. Debtors seek to use Rule 2004 to support claims of liability against Talbert and I-15 Auctions. This is an improper use of Rule 2004. They cannot be used to avoid the limitations of formal discovery rules. *See In re Snyder,* 52 F.3d. 1067 (5th Cr. 1995) (unpublished) (denial of Rule 2004 litigation based on "motive" to develop *personal* litigation claims and avoid stricter discovery rules). Debtors seek to pursue litigation against Talbert and I-15 Auctions, as such, the 2004 Exam is improper.

57. Rule 2004, has a limited scope of examination, section (b) and provides that an "examination of an entity under this rule or of the debtor under section 343 of the Code *may relate only to the acts, conduct, or property, or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtors estate, or the debtors right to a discharge. (emphasis added).*

58. Before looking at the scope of Rule 2004, "it must *first* be determined that the examination is proper." *In re GHR Energy Corp.,* 35 B.R. 534, 538 (Bankr. D. Mass. 1983).

59. "While it is obvious that particular rights of a creditor are affected when one of its debtors files for protection under the Bankruptcy Code, it cannot be said that a creditor necessarily loses the protections afforded by the Federal Rules of Civil Procedure especially in the context of an action arising under non-bankruptcy law." *Id.* While the purpose of Rule 2004 is broad, it is not without limits. "The examination of a witness

MOTION FOR PROTECTIVE ORDER ON THE ORDER GRANTING DEBTOR'S MOTION FOR 2004 EXAMINATION OF I-15 AUCTIONS, PERSON MOST KNOWLEDGEABLE, AND FOR PRODUCTION OF DOCUMENTS

[under Rule 2004] as to matters having no relationship to the debtor's affairs or no effect on the administration of the estate is improper." *In re Continental Forge Co., Inc.,* 73 B.R. 1005, 1007 (Bankr. W.D. Pa. 1987); *see also Matter of Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985)(examination of entity was improper).

60. Although examinations of third parties under Rule 2004 is permitted, the language of the rule makes it "evident that an examination may be had only of those persons possessing knowledge of a debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy." *In Re GHR Energy Corp.*, 35 B.R. at 537. Therefore, "it is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *Matter of Wilcher*, 56 B.R. at 434; *see also In re Continental Forge Co., Inc.,* 73 B.R. at 1007(recognizes the non-debtor's right to privacy in its business affairs).

61. The 2004 Examination cannot be used to "transform the rule from an investigatory device, designed to expedite the administration of the bankruptcy estate, into something not unlike a proceeding supplemental, which creditors could use in an effort to collect the amounts due them outside the bankruptcy proceeding." *In re J & R Trucking, Inc.*, 431 B.R.818, 821 (Bankr. N.D. Ind. 2010). *In J & R Trucking, Inc.*, Judge Grant described this key limitation as follows:

Rule 2004 of the Federal Rules of Bankruptcy Procedure allows the court to authorize the examination of any entity as to "the acts, conduct, or property, or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate or to the debtor's right to a discharge." Fed. R. Bankr. P. Rule 2004(b). The opportunity for such an examination is available to "any party in interest," Fed. R. Bankr. P. Rule 2004(a), but whether or not the court allows the examination is a matter committed to its discretion, *In re Rosenberg*, 303 B.R. 172, 175 (8th Cir. BAP 2004); *Dinubilo, [In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993)], 177 B.R. at 939, and requires a sufficient cause. *Dinubilo*, 177 B.R. at 943; *In re Symington*, 209 B.R. 678, 687 (Bankr. D. Md. 1997); *Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985). *See also*, NORTON BANKRUPTCY RULES, 2009-10 ed., Rule 2004 ed. comment (c), pp. 136-37 (Creditors do not have an absolute right to conduct examinations under rule 2004 "which provides that the court 'may order' an examination. One can readily visualize a situation where creditors may want to use this section to **deal with their special problems and use the**

MOTION FOR PROTECTIVE ORDER ON THE ORDER GRANTING DEBTOR'S MOTION FOR
2004 EXAMINATION OF I-15 AUCTIONS, PERSON MOST KNOWLEDGEABLE, AND FOR
PRODUCTION OF DOCUMENTS

**section as a substitute for discovery.**") (emphasis added).

Although a Rule 2004 examination is obviously an investigatory device and it is conducted under oath, it should not be confused with discovery or a discovery deposition. See generally, *Dinubilo*, 177 B.R. at 939-40; *Symington*, 209 B.R. at 683-85; *Wilcher*, 56 B.R. at 433-34; NORTON, RULE 2004 comment (c), p. 137. The two are different, both in terms of the context in which they occur and the scope of the requested examination. Discovery can only take place in the context of some type of dispute-be it an adversary proceeding or a contested matter-and the scope of the inquiry is limited to issues which are relevant to that dispute. *See*, Fed. R. Civ. P. Rule 26(b)(1). A 2004 examination, on the other hand, not only does not require the existence of litigation to justify the inquiry, but, such a dispute prevents recourse to it. **A 2004 examination is not a substitute for discovery; if the traditional discovery tools are available the potential examiner is required to use them and may not take advantage of Rule 2004.** The fact that a Rule 2004 examination is taking place outside the context of an identifiable dispute influences not only its availability but also its scope. Unlike traditional discovery, which narrowly focuses on the issues germane to the dispute, Rule 2004 has been rightly characterized as a "fishing expedition." It is a broad-ranging inquiry into the debtor's assets, liabilities, financial affairs and anything else that might affect the administration of the bankruptcy estate.

*J & R Trucking, Inc.*, 431 B.R. at 821 (emphasis added).

62. In an effort to cooperate with Debtor before this 2004 exam was requested, Respondents produced all Seller Settlements at Auction for Mr. Talbert with I-15 Auctions. The documents describe the type of vehicle sold, the bidder number, the quantity purchased, the bid amount, the commission totals, and the lot net amounts. This can be found in Debtor's Motion for 2004 Examination and Request for Production of Documents, Docket Entry 67, "Exhibit B," pages 24-47).

63. This production was merely an attempt to be cooperative and in no way intended to waive the requirements or scope of Rule 2004.

64. Respondents assert Debtors are filing a 2004 examination in an effort to find a claim against Respondents, which is improper.

65. The Rule 2004 does not allow this. "Movants understandably want their money, but that does not justify turning a tool that has been developed to efficiently administer bankruptcy estates into a private collection device for creditors. **Movants have other tools and other for which they can use to investigate their rights against third**

**parties and to collect the amounts they are owed. They should use them and not Rule 2004.**" *J&R Trucking*, 431 B.R. at 823. Put simply by the court, "**movants desire to identify third parties who may be liable to them…is [not] the purpose of Rule 2004**. *Id* at 822.

66. Debtors indicate that this information in the 2004 examination "is required to support a claim it may have against Talbert, personally." (Debtors Motion, Docket No. 67, page 3, lines 17-18).

67. Debtors indicate the investigations may reveal preferential payments and/or fraudulent transfers to be pursued by PCW. (Debtors Motion, page 4, lines 1-3).

68. Furthermore, Debtors allege that there is no adversary proceeding against Talbert or I-15, but that depending on the results of the 2004 examination, PCW will establish grounds for litigation. (Debtors Motion, page 4, lines 4-13).

69. Debtors also indicate in their Motion that the purpose of the 2004 examination will to determine other claims against Talbert it can pursue. (Debtors Motion, page 4, lines 25-27).

70. Throughout Debtors Motion requesting a 2004 examination of Respondents they indicate the information will be used in litigation against Talbert and I-15. Rule 2004 is clearly not allowed to circumvent the protections afforded to civil defendants during discovery and the rule cannot be used.

71. Therefore, a 2004 examination should not go forward based on Respondent's full compliance with the production request. In the alternative, we ask for a Protective Order should be issued as this is in anticipation of litigation and an improper use of Rule 2004. The protective order should be issued as the information is a trade secret, confidential and privileged and has no relevance to the pending bankruptcy matter and should not be produced or the production limited to not include third party buyer information of non parties.

## VIII. FAILURE TO DEMONSTRATE GOOD CAUSE

72. Debtors request a protective order and an that the Order for a 2004 examination of Respondents should be vacated because Debtors cannot show good cause as to why it requires the requested information.

73. *See, e.g., In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (the examiner bears the burden of proving that good cause exists for taking the requested discovery).

74. The burden of showing good cause is affirmative that a proponent can meet only by showing the materials are "necessary to establish the movant's claim…or for the protection of legitimate interests" or "that denial of production would cause undue hardship or injustice." *In re Youk-See,* 450 B.R. 312, 320 (Bankr. D. Mass. 2011). The burden cannot be satisfied merely by showing the material is relevant. *See, e.g., In re Drexel Burnham Lambert Group, Inc.,* 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991).

75. Here Debtors does not demonstrate that the information is necessary to establish a claim in the bankruptcy, only for a third party civil ligation. The Rule 2004 order for examination should be vacated and a protective order be issued.

76. Furthermore, the information is not only not relevant, it is confidential, trade secreted, protected information. The information as it relates the non party third party buyers of PCW items at auction is not only not relevant but would severely harm Respondent's business if disclosed.

77. The debtors already have the information requested via Respondent's earlier production, the information is available through a party to the case, Talbert, and the information can be sought is publicly available.

*DEBTORS CAN OBTAIN THE INFORMATION THROUGH OTHER MEANS AND/OR ALREADY HAVE THE REQUESTED INFORMATION*

78. The Motion seeks information, which can be produced by a party to the case, creditor Talbert. There is no need to involve I-15 Auctions, a third party to the bankruptcy. Talbert can disclose all the information requested. And, as discussed above, if Debtors

MOTION FOR PROTECTIVE ORDER ON THE ORDER GRANTING DEBTOR'S MOTION FOR
2004 EXAMINATION OF I-15 AUCTIONS, PERSON MOST KNOWLEDGEABLE, AND FOR
PRODUCTION OF DOCUMENTS

1    would like to pursue litigation against Talbert personally, then the proper avenue to

2    obtain the information is through a civil case and not using Rule 2004.

3    79. Furthermore, some of the information requested is available to the public. If Ms. Dye

4    goes to wwwI-15auctions.com, clicks the link for "view auction and bid," click the

5    menu option for "bid online," and at the bottom, click "view archived events," or go to

6    https://jospickins.proxibid.com/asp/AuctionsByCompany.asp?ahid=6119&cid=9999999

7    9&at=&Archived=1#Archived, all of the auctioned items and prices sold are listed for

8    every auction I-15 has conducted.

9    80. *In re Summit Corp.*, 891 F.2d. 1 (1st Cir. 1989) involved a dispute that arose in Grant's

10    Chapter 7 case. Grant's estate owned 70% in APC and the trustee wanted to sell the

11    stock. A major business competitor, Rand, and D'Elia, the 30% owner of APC, wanted

12    to examine APC's records to determine the amount of their bid and sought an order

13    under Rule 2004. The Court of appears noted that the bankruptcy court "tailored the

14    discovery so as to achieve a balance between the confidentiality of APC's affairs and

15    need for competitive bidding. **The court specifically withheld from Rand sensitive**

16    **information concerning customer lists, as well as cost and price information."**

17    Here, some of the requests are not tailored and all seem to be aimed at potential third

18    party civil litigation. Furthermore, the customer list of Respondent's business should be

19    protected. The buyer's at auction of PCW's information ahs no probative value and is

20    severely prejudicial to Respondent's business.

21    81. *In Re Financial Corporation of America*, 119 B.R. 728 (Bankr. C.D. Calif., 1990)

22    indicates that examination of third parties under Rule 2004 is limited to issues

23    concerning the debtors business or assets.

24    82. *In re Jewelers Shipping Association,* 97 B.R. 149, 150 (Bankr. R. I.,1989) showed that

    the customer list was "confidential," ***including a list of debtors customers*** and was

    considered outside the scope of a 2004 exam.

83. *See, e.g., In re Symington*, 209 B.R. 678, 688 (Bankr. D. Md. 1997)(noting Rule 2004 exam is not justified "where the information purportedly *sought is either already well-known or within the would-be examiner's possession*")(emphasis added).

84. The requested information is of checks paid to Talbert (Debtors Motion, page 3, lines 10-18). A party to the case, Talbert, as a creditor, can provide this information and there is no need to involve a non-party.

85. Debtors want to conduct the exam to gain sales of other vehicles auctioned by I-15 that Talbert took from PCW premises or given to him in partial payment of PCW loans. (Debtors Motion, page 3, lines 19-23). This request is too broad. There are no vehicles specified for which I-15 could produce **information without disclosing sensitive customer information from other about their buyers and sellers.** How is I-15 to identify the cars that "Talbert took from PCW," as I-15 was not a party to Talbert/PCW arrangements. *See, In Re Financial Corporation of America and In Re Jewelers Shipping Association.* This information needs protection provided by the court.

86. Debtors seek preferential payments or fraudulent transfers to be pursued by PCW (Debtors Motion, p. 4, 1-3). I-15 has no knowledge of any fraudulent transfers made and the information requested could encompass anything. It is too broad and could require I-15 to disclose sensitive information of its customers. *See, In Re Financial Corporation of America and In Re Jewelers Shipping Association.* Such customer information needs to be protected by the court.

87. Debtors seek, in request No. 3 and 9, all documents relating to or reflecting any ownership interested provided to I-15 in connection with vehicles sold at auction on 03/14/15 and 04/1I-15, including any bill of sale and transfer forms. This request is too broad and encompasses sensitive customer information for ALL customers whose items were sold on those dates. *See, In Re Financial Corporation of America and In Re Jewelers Shipping Association.* In addition, Debtor was present during at least one of the two auctions and should have the knowledge requested. *See, In re Symington.* The

MOTION FOR PROTECTIVE ORDER ON THE ORDER GRANTING DEBTOR'S MOTION FOR
2004 EXAMINATION OF I-15 AUCTIONS, PERSON MOST KNOWLEDGEABLE, AND FOR
PRODUCTION OF DOCUMENTS

customer information is protected as trade secret, is privileged, is private and confidential and the disclosure of such would harm Respondent's business.

88. Debtors seen, in request No. 6 and 12, all documents relating to the payment of proceeds from the sale of vehicles, including, but not limited to Talbert. This is too broad. There is no time limit so that the scope can be limited. The information requested contains sensitive customer information for sales of vehicles by ANY party. *See, In Re Financial Corporation of America and In Re Jewelers Shipping Association.* The sales prices of PCW property have already been provided to Debtors. The confidential non-party buyer information about PCW items is not relevant and is more prejudicial than it is probative. Respondent's business relies on the confidentiality of its buyers and that information will not aid Debtor in his bankruptcy. It is not relevant, but it will harm Respondent's business and that information is a trade secret, privileged and confidential.

89. Debtors, seek, in request No. 7, and 13 all documents relating to the identity of the purchaser of the vehicles sold by I-15 auction on 03/4/15 and 04/11-15. This is too broad and contains sensitive customer information. *See, In Re Jewelers Shipping Association.* In addition, Debtor was present for at least one of the two auctions and has the requested information. *See, In re Symington.* The confidentiality of the customer list of Respondent's is what the business relies on to continue as a business, its reputation. The information as it relates to PCW and Talbert or other creditors in this current bankruptcy have already been agreed to be provided absent this court's ruling on the issue, however, the third party buyer identifying information is not necessary for valuation or any claim Debtor has in his bankruptcy. This information would only serve to hurt Respondent's business.

90. In addition, all information that I-15 has on sales at auction on 03/04/15 and 04/11-15 for the seller Talbert has already been provided to Debtors and there is no more information available regarding the relationship between I-15 and Talbert. If Talbert was the purchaser of any vehicles at those auctions, absent this courts order, such information is

MOTION FOR PROTECTIVE ORDER ON THE ORDER GRANTING DEBTOR'S MOTION FOR 2004 EXAMINATION OF I-15 AUCTIONS, PERSON MOST KNOWLEDGEABLE, AND FOR PRODUCTION OF DOCUMENTS

agreed to be provided. However, protected, trade secreted, and confidential customer lists of non-parties to the bankruptcy should be protected and shall not be provided.

91. There is no good cause to proceed and we request the court vacate its order awarding debtors motion for 2004 examination and production of documents.  In the alternative, we request a Protective order be issued against undue burden and harassment on Respondents and more time be allowed for any production and that third party customer information is protected and not disclosed to any party to this case, including Debtor.

## IX. UNDULY BURDENSOME AND HARASSING

92. The court should vacate its order and issue a protective order because the 2004 examination and production of document request is unduly burdensome, duplicative, and harassing.

93. The documents requested have been provided already to Debtors. It's duplicative and harassing.

94. The documents can be accessed publicly through I-15 auction's website. It's duplicative and harassing.

95. The documents and information can be sought by a Party to the case, Mr. Talbert. It's harassing.

96. The only other documents in possession by Respondents showing any relation between Mr. Talbert and I-15 auctions and PCW is the original contract between the parties to sell at auction and copies of canceled checks, for which more time is needed to obtain and for which Talbert, as a party, can produce.

97. The sole purpose of the Debtors request for the 2004 exam and production of documents is to pursue litigation against Talbert and I-15. This is completely improper use of Rule 2004 and the orders should be vacated and a protective order issued. *See, e.g., Snyder*, 52 F.3d at 1 (noting Rule 2004 examination "cannot be used to harass or oppress the party"); *In Re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (Courts may limit Rule 2004 when it's designed to abuse or harass).

MOTION FOR PROTECTIVE ORDER ON THE ORDER GRANTING DEBTOR'S MOTION FOR 2004 EXAMINATION OF I-15 AUCTIONS, PERSON MOST KNOWLEDGEABLE, AND FOR PRODUCTION OF DOCUMENTS

98. Furthermore, Respondents were given 1 day, rather than 24 days, to respond to the Motion before the Order was granted. This was meant to harass Respondents into compliance.

99. The requested production of document date is 01/19/16, receipt of which was on 01/14/16, a **mere 4 days** to provide the information. This is too burdensome. There are also no fees provided to I-15 for their time and expense in making the production available. Debtors need to pay Respondents for production of documents already produced and for future production. Debtor's attorney has since agreed to postpone the production date to 01/26/16, still only providing Respondent's with 12 days to produce the documents.

100. The requested deposition date is 01/26/16, for which Respondents have 12 days to prepare from the date of receipt of the order. This is not enough time for Respondents to make themselves knowledgeable about the requests. Debtor's attorney has agreed to postpone the examination until 01/29/16, only a few days later, and still is not enough time for respondents to make themselves knowledgeable, albeit it does give them more time.

101. No subpoena was issued for the production of documents or 2004 examination.

102. Furthermore, the deposition location is set on Wilshire Blvd., in Los Angeles, CA. Respondents live in Apple Valley, CA and **this is a distance of almost 100 miles**. This is too far for Respondents to drive. Since this order, Debtor's attorney agreed to a location in Riverside, CA, however, no formal amendment was made.

103. More pressing is the availability of any person most knowledgeable in this case. **Respondents work on a ranch, which requires near 24-hour supervision, especially from sunrise to sunset**. Respondents run a small family business and do not have the resources or time to travel near 100 miles for an examination that can last days. It will severely impact their business if they are made to travel so far. It will be hard enough to take a few hours of time off in order to address the questions that the Debtors have in

this case. Debtor's attorney did agree to, this afternoon, a location in the middle of their places of business, in Riverside, CA.

104. The 2004 examination has no time limit. We request that if the court does not vacate the order as requested, that there be a reasonable time limit put on Respondents, as a third party to this case. We believe no more than 3 hours to be sufficient. We request that non party information be protected, including buyer information of PCW property at auction.

105. Furthermore, no monies have been paid to Respondents for the production of the discovery already given, nor for future productions, nor for the travel to the examination.

106. We respectfully assert that a Protective order be issued and an the previous order be vacated grating Debtors Motion for 2004 Examination and Production of Documents as the third party information sought is confidential, privileged, and a trade secret which would harm Respondent's business if produced, it is meant to be burden Respondents by not giving them the proper time frame in which to respond, improper use of the 2004 examination for litigation, by having to travel near 100 miles to the examination, and producing documents with only 4 days to respond. Although Debtor's attorney has agreed to postpone the hearing 3 days and the production deadline by 7 days and change the venue Riverside, CA, this is still not enough time to prepare for the Debtors requests and no formal amendment for such as been made.  In addition, this examination is in anticipation of litigation and should not go forward.

*WITNESS FEES TO BE PAID FOR IN ADVANCE*

107. Furthermore, no witness fees have been paid for in this case as required by Court Manual, Section 2.8(f)(6) and (7). A subpoena (which was not issued, but for which there should have been one issued), also requires mileage and witness fees to be paid. F.R.Civ.P.45(b)(1).

MOTION FOR PROTECTIVE ORDER ON THE ORDER GRANTING DEBTOR'S MOTION FOR 2004 EXAMINATION OF I-15 AUCTIONS, PERSON MOST KNOWLEDGEABLE, AND FOR PRODUCTION OF DOCUMENTS

108. Respondents are NOT a party to the case and are being asked to participate in a 2004 examination as a third party.

109. The witness fees include " (A) Per diem, mileage, subsistence, and attendance fees as provided in 28 U.S.C. § 1821 paid to witnesses subpoenaed or actually attending the proceeding; (B) Witness fees for a party if required to attend by opposing party; and (C) Witness fees for officers and employees of a corporation if they are not parties in their individual capacities." Court Manual, Section 2.8(f)(7).

110. Costs incurred with taking a deposition include "reasonable witness fees paid to a deponent." Court Manual, Section 2.8(f)(6).

111. We request that a Protective order be issued, that respondents be found in compliance with the courts order. If the examination is to proceed, we request that reasonable fees, mileage, and parking be paid to Respondents for appearing at the 2004 examination, IN ADVANCE. We believe the reasonable witness fee to be an entire day's work, we request the parking at the location building, and mileage to travel there be paid in advance.

### X. ATTORNEY FEES

112. Respondents request that the Debtors pay their attorney fees in association with this Motion to Vacate and Motion for Protective Order. But for the Debtors acting in a harassing manner and unduly burdening the Respondents, these Motions would not have to be made.

113. The information sought by Debtor is protected third party information. Debtor indicates no reason why it needs the buyer information for every buyer of PCW property at auction, when the pricing information has been provided. The buyer information has no probative value to the bankruptcy. The buyer information does have probative value for Debtors third party case against Talbert, a creditor. However, if information is to be provided, only information as it relates to Talbert being a buyer of PCW property should

MOTION FOR PROTECTIVE ORDER ON THE ORDER GRANTING DEBTOR'S MOTION FOR
2004 EXAMINATION OF I-15 AUCTIONS, PERSON MOST KNOWLEDGEABLE, AND FOR
PRODUCTION OF DOCUMENTS

be disclosed. The third party information, if released, would greatly harm Respondent's business reputation, for which it relies on for its existence as an auction house.

114. Rule 37(a)(5) provides for payments of expenses for protective orders. (A) provides that if the motion is granted, the court must, after "giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

115. Here, we made a good faith attempt at reaching Debtor's attorney before filing the motion but no agreement was reached. Attached as Exhibit "A" is Respondent's request for a protective stipulation and Exhibit "B" is Debtor's version.

116. Due to the urgency of the matter, the motion for protective order was filed to protect Respondents rights and is justified.

117. WEHREFORE, Respondents respectfully request that reasonable attorneys fees be paid to Respondents in the making of their Motion to vacate the Order and Motion for Protective Order be issued immediately.

## XI. CONCLUSION

118. Respondents assert that the information being sought is protected privileged, trade secreted, confidential, third party information that has no probative value to the pending bankruptcy case. If disclosed, would harm Respondent's business as it relies on the confidential nature of its buyer's to continue on as an auction house.

119. Respondents assert that there was not proper notice given for the underlying motion that was ordered on 1/8/16. No subpoena was issued for the 2004 examination, as is required because Respondents are a third party and not associated with the Debtors bankruptcy.

120. Respondents should have had 24 days to respond (21 plus 3 for mailing) and objection to Debtor's Motion for 2004 examination and production of documents, but were only given ONE day before the order was granted. This was not enough time and caused undue burden on Respondents.

121. Furthermore, Debtors use the 2004 examination improperly. They are using it for litigation against Talbert and I-15 auctions and as such, should be barred from proceeding.

122. Debtors are causing undue embarrassment, harassment and expense on Respondents by making them respond within 4 days to their production request and 12 days for the examination, by having to drive near 100 miles to the examination, and not paying any fees for production or for the witness to attend. Although Debtor's attorney has agreed to the examination in Riverside, the production of document date was extended by 7 days and the examination only 3 days. This is still too soon for Respondents to adequately prepare and no formal amendment was made.

123. WHEREFORE, Respondents respectfully request the court find Respondent's complied with the court's order without violating the rights of third parties, that the 2004 examination and production of documents limited to those already produced and served with the courts order. In the alternative, we request the Protective Order be issued, Respondents also request that the 2004 examination be held closer to Respondents place of business in Apple Valley, CA or via video. We request that the examination time be limited to 3 hours. We request that Debtors pay Respondents in advance for production of documents expenses and witness expenses.

January 19, 2016                              Respectfully Submitted,

                                              Kara Shacket, Esq.
                                              Attorney for Third Party, I-15 Auction

MOTION FOR PROTECTIVE ORDER ON THE ORDER GRANTING DEBTOR'S MOTION FOR
2004 EXAMINATION OF I-15 AUCTIONS, PERSON MOST KNOWLEDGEABLE, AND FOR
PRODUCTION OF DOCUMENTS
- 24 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
3889 Caminito Aguilar #F, San Diego, CA 92111
A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION FOR PROTECTIVE ORDER** will be
served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the
manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

           ☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) _01/19/16_____, I served the following persons and/or
entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy
thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the
judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document
is filed.

Carolyn A. Dye, Attorney for Debtor
Law Offices of Carolyn A. Dye
3435 Wilshire Boulevard, Suite 990
Los Angeles, CA 90010

Office of U.S. Trustee
United States Trustee (SV)
915 Wilshire Blvd., Ste. 1850
Los Angeles, CA 90017

Debtor
Picture Car Warehouse, Inc
8400 Reseda Blvd.
Northridge, CA 91234

           ☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _01/19/16_____,
I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in
writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a
declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the
document is filed

Honorable Maureen Tighe via personal Delivery-Attorney Service
United States Bankruptcy Court
21041 Burbank Blvd. Ctrm 302,
Woodland Hills, CA 91367

Via Email to Mr. Sarver, Attorney for Mr. Talbert (adsarver@aold.com) and to Ms. Dye, Attorney for Debtor
(cdye@cadye.com), and Ms. Bunker, Trustee ( kate.bunker@usdoj.gov ) and Penelope Parmes
(Penelope.parmes@troutmansanders.com)

           ☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

01/19/16    Kara Shacket
_____
Date            Printed Name                Signature